IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

ANTHONY MAYS, #190 493                    *

     Plaintiff,                              *

        v.                                   *              2:05-CV-992-ID
                                                                  (WO)
TOMMY FLOWER, *et al.*,                    *

     Defendants.                             *

_____

## RECOMMENDATION OF THE MAGISTRATE JUDGE

In this 42 U.S.C. § 1983 action, Anthony Mays ["Mays"], a state inmate, complains that Defendants violated his First and Fourteenth Amendment rights by preventing him from practicing his religion, Shetaut Neter.   Named as defendants are Warden Willie Thomas, Thomas Woodfin, Chaplain for the Elmore Correctional Facility, Steve Walker, Chaplain Supervisor, and Thomas Flower, Director. Mays requests that he be allowed to practice the Shetaut Neter religion at the Elmore Correctional Facility, that Defendants be required to comply with all the requirements of the Shetaut Neter faith, and that he be granted $25,000.00 in damages for discrimination, hardship, and negligence.

In accordance with the  orders of the court, Defendants filed a special report and supporting evidentiary material in response to the allegations contained in the complaint. (*Doc. No. 15*.)  The court then informed Mays that Defendants' special report  may, at any time, be treated as a motion for summary judgment, and the court explained to Mays the proper manner in which to respond to a motion for summary judgment.  Mays filed a

response to the special report filed by Defendants. (*Doc. No. 17*.) This case is now pending on Defendants' motion for summary judgment. Upon consideration of the motion, the evidentiary materials filed in support thereof, and Mays' opposition to this motion, the court concludes that Defendants' motion for summary judgment is due to be granted.

## I. STANDARD OF REVIEW

To survive the properly supported motion for summary judgment filed by Defendants, Mays is required to produce some evidence which would be admissible at trial supporting his constitutional claims. Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990). A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing adequate to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).

Where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-1585 (11th Cir. 1996). Summary judgment is, therefore, appropriate when the pleadings, admissible evidentiary materials and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) *Federal Rules of Civil Procedure*; *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Mays has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.

## II.  DISCUSSION

*A.  The Request for Injunctive and Declaratory Relief*

Mays is no longer incarcerated at the Elmore Correctional Facility ["Elmore"].[1]  The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See  County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury).  Because the records before the court clearly reflect that Mays is no longer incarcerated at Elmore, his requests for declaratory and injunctive relief have been rendered moot.

*B.  The First Amendment Claim*

On January 20, 2005 Mays submitted a request to Chaplain Woodfin indicating that he wished to change his religion from Islam to Shetaut Neter.[2] On January 25, 2005 Mays submitted a letter to the Alabama Department of Corrections ["ADOC"] and counsel for the agency regarding his interest in changing his religion.  Approximately one month later Mays provided Chaplain Woodfin with documentation regarding the practice of Neterianism including its dietary requirements. Counsel for the ADOC set the matter for a hearing on

---

[1]During the pendency of this action, Mays was transferred to the Childersburg Work Release facility, in Childersburg, Alabama.

[2]Shetaut Neter is an African Religion.  It has been practiced since the time of Ancient Kemet (Ancient Egypt 10,000 B.C.E.).  (*See Doc. No. 15, Attachments to Woodfin Affidavit at 9.*)

May 25, 2005.[3]  In the interim, Mays asked Defendants Thomas and Woodfin that he be allowed temporary class time until his religious request went before the ADOC's Religious Activities Committee.  (*Doc. No. 1*.)

Mays complains that Defendants violated his First Amendment right to the free exercise of his religion and his Fourteenth Amendment right to equal protection by depriving him and other inmates the ability to practice the Shetaut Neter faith pending a decision by the Religious Activities Committed while allowing other religions at Elmore "chaplain time." Mays further alleges that his desire to follow the religious diet of the Shetaut Neter religion has been completely ignored by Defendants.[4]  (*Doc. No. 1*.)

Defendants have submitted the affidavits of Warden Willie Thomas, Steve Walker, Departmental Chaplaincy Coordinator, and Thomas Woodfin, Chaplain for the Elmore Correctional Facility. Warden Thomas and Chaplain Woodfin state that Shetaut Neter is  not an approved and/or  recognized religion at Elmore.  *See Administrative Regulation 313 and 333*.[5] After reviewing Mays' request to practice Neterianism, Warden Thomas recommended that the decision whether or not to recognized Shetaut Neter as a religion be at the total discretion of the Religious Activities Review Committee.  Chaplain Woodfin received Mays' request to practice Neterianism on February 9, 2005. Because of the religions' seemingly

---

[3]Mays states that the hearing was rescheduled for "June and July 21, 2005."  (*Doc. No. 1 at 4*.)

[4]Followers of the Shetaut Neter religion follow a vegan diet known as a Kemetic Diet.  (*See Doc. No. 15, Attachments to Woodfin Affidavit  at 11*.)

[5]*Available at http://www.doc.state.al.us/docs/AdminRegs/AR313 - Chaplain Services and Religious Activities and AR333 -Religious Program Services.*

small following, Chaplain Woodfin recommended that it be limited to solo study. Chaplain Woodfin then sent his and Warden Thomas' recommendation and Mays' religious request to Chaplaincy Coordinator Walker ["Chaplain Walker"]. (*Doc. No. 15, Thomas, Woodfin, and Walker Affidavits, and Attachments.*)

Chaplain Walker affirms that Mays' request to establish the Shetaut Neter faith at Elmore is pending before the Religious Activities Committee. Members of the committee have had extreme difficulty obtaining information on Neterianism. Additionally, Chaplain Walker indicates that the list of inmate names Mays submitted who purportedly also wished to have the Shetaut Neter religion recognized at Elmore was unreliable. Specifically, Chaplain Walker asserts that some inmates had been moved from Elmore and others denied that they were signing up for a religious group. When sufficient information about the Neterianism religion is received and reviewed, Chaplain Walker maintains that the Religious Activities Committee will be able to determine the effect Mays' request will have on Elmore's security, safety, and available resources. Until a decision on Mays' request is made by the Committee, Chaplain Walker affirms that he is free to participate in his religion under current ADOC rules and regulations and may receive religious materials pertaining to Shetaut Neter in accordance with general correspondence and mail guidelines that apply to all ADOC inmates. (*Doc. No. 15, Walker Affidavit.*)

Mays has failed to demonstrate that Defendants' acted in an unconstitutional manner in regard to his ability to practice the Shetaut Neter religion. Defendants state that Mays' request to establish the Shetaut Neter religious faith was submitted to the Religious Activities

6

Committed in May 2005. According to Chaplain Walker, however, members of the Committee have encountered extreme difficulty obtaining information on this particular religion. Further, the list of names Mays submitted with his religious request contains only eleven inmate names and has been unreliable in determining the size of the religious group. Some of the inmates on the list have since left Elmore while others denied signing up for a religious group.[6] Nonetheless, Defendants state that Mays may practice his faith individually in accordance with ADOC rules and regulations even though the Shetaut Neter religion has not officially been recognized within the prison system.

"In the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822 (1974); *Lawson v. Singletary,* 85 F.3d 502, 509 (11th Cir. 1996). An inmate's right to exercise his religion, however, is not absolute; it is only required that he be accorded a reasonable opportunity to pursue his religion. *Cruz v. Beto,* 405 U.S. 319, 322 (1972) (*per curiam*). Thus, while inmates maintain a constitutional right to freely exercise their sincerely held religious beliefs, this right is subject to prison authorities' interests in maintaining safety and order. *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 345 (1987); *Turner v. Safley,* 482 U.S. 78 (1987).

Under *Turner*, [federal] action by prison officials that infringes upon a prisoner's First Amendment rights is valid if it is reasonably related to legitimate penological interests. *Id.*

---

[6]In his opposition, Mays explains that while some of the inmates on the list were not willing to change their religion they were "willing to participate in [Neterianism]". (*Doc. No. 17 at 3.*)

at 89. The Court in *Turner* set forth a four-prong test to determine this question: "(1) whether there is a rational relationship between the regulation and the legitimate government interest advanced; (2) whether the inmates have available alternative means of exercising the right; (3) the impact of the accommodation on prison staff, other inmates, and the allocation of prison resources generally; and (4) whether there are "ready alternatives" to the regulation." *Id*. at 89-91. *See Freeman v. Texas Department of Criminal Justice,* 369 F.3d 854, 860 (5th Cir. 2004) (interpreting the decision in *Turner* as stating that a court need not weigh evenly, or even consider, each of the factors, as rationality is the controlling standard).

Here, there is a rational relationship between the regulations regarding inmate religious requests such as the one presented by Mays and the legitimate government interest advanced. Moreover, the regulations were also applied properly in this action. When considering the requirements set forth by the Court in *Turner,* it is apparent that the Mays has alternative means of exercising his right. As stated by both Chaplain Walker and Chaplain Woodfin, Mays is free to individually practice his faith and receive pertinent allowable religious literature even though Neterianism has not been officially recognized by the ADOC. Thus, Mays has an alternative means to exercise his rights by continuing to practice his faith individually. Also, as discussed in Chaplain Walker's Affidavit, the impact of accommodation on prison staff and the allocation of prison resources generally is a consideration with respect to Mays' request to have Neterianism recognized. Defendants' evidentiary material shows that a very small number of inmates indicated an interest in having the Neterian faith recognized and of those, some are no longer at Elmore and others

denied signing up for a religious group. Accommodating a very limited number of inmates interested in establishing the Neterian faith at Elmore could present a burden on ADOC resources. Finally, with regard to the existence of a rational relationship between the regulations and the legitimate government interest advanced, Administrative Regulation 333 provides a basis to review requests by inmates to recognize a specific faith. The staff and space limitations, as well as the financial burden, are legitimate penological interests. Furthermore, "[a] special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty." *Cruz v. Beto,* 405 U.S. 319, 322, n.2 (1972).

In this case, Mays has not alleged much less demonstrated that Defendants have not allowed him to practice his religion individually without fear of reprisal of any kind. While Defendants may not have afforded Mays the opportunity to meet with others to practice his religion and/ or the ability to go to a specific location in order to engage in the worship of his religion, he has not demonstrated that he did not otherwise have a reasonable opportunity to engage in the free exercise of his religion or the ability to practice his faith individually. Further, the undersigned finds that ADOC policy requires the prison menu to be nutritionally adequate for inmates who may be on a vegan diet due to religious preferences.[7] The menu

---

[7]*Available at http://www.doc.state.al.us/docs/AdminRegs/AR700.*

is planned with consideration of religious preferences for purposes of eliminating the need for menu substitutions.[8]  In this case, Mays does not allege that a vegan diet is required for the practice of his faith nor does he indicate that the prison menu could not meet his desire to follow his faith's  dietary provisions.  Simply put, Mays has not alleged, much less demonstrated, that the practice f his faith was  hindered by the provision of a general prison diet.

In this  case,  Defendants have satisfied the criteria set forth under *Turner,* and the court finds that Mays has not shown that the conduct and/or actions of Defendants violated his constitutional right to practice the Shetaut Neter religion.  Accordingly, Defendants' dispositive motion with respect to Mays' First Amendment claim is due to be granted.

*C.  The Equal Protection Claim*

Mays complains that Defendants violated his right to equal protection by denying him and other inmates the right to practice the Shetaut Neter religion while allowing other religions at Elmore "chaplain time."  ( *Doc. No. 1 at 3*.)

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The equal protection clause 'is essentially a direction that all persons similarly situated should be treated alike.' " *Spence v. Zimmerman,* 873 F.2d 256, 261 (11th Cir. 1989), quoting *City of Cleburne, Texas v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439 (1985). A disparate

---

[8]*Id.*

10

treatment claim requires establishing that similarly situated inmates were not similarly treated and that prison officials engaged in invidious discrimination based on race, religion, national origin, poverty, or some other constitutionally protected interest. *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (the Equal Protection Clause "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."); *Jones v. Ray*, 279 F.3d 944, 947 (11th Cir. 2001); *Damiano v. Florida Parole and Probation Commission*, 785 F.2d 929, 932-33 (11th Cir. 1986).

Additionally, to succeed on an equal protection challenge, the plaintiff must demonstrate the existence of discriminatory intent; arbitrary application of prison rules without discriminatory intent is insufficient to demonstrate a violation of the Equal Protection Clause. *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993); *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987). Thus, in order to state a viable equal protection claim, Mays must first make a threshold showing that he was similarly situated in the relevant aspects to those who received more favorable or different treatment. *See, e.g., Oliver v. Scott*, 276 F.3d 736, 746-47 (5th Cir. 2002) ( finding no equal protection violation where security-related policy treated male and female prisoners differently because male prisoners in a certain prison were more numerous and had been convicted of more violent offenses). ) "Bare allegations that 'other' applicants, even 'all other' applicants, were treated differently do not state an equal protection claim; a complaint must attempt to show in some fashion that these 'other' applicants were situated similarly to the Plaintiff." *GJR Inv., Inc. v. Escambia,* 132 F.3d 1359, 1367-68 (11th Cir. 1998); *see also Norvell v. State of Ill.*, 373

11

U.S. 20, 423 (1963) ("[e]xact equality is no prerequisite of equal protection of the laws within the meaning of the Fourteenth Amendment.").

Mays must also show that Defendants acted with intent to discriminate against him.

> [O]fficial action will not be held unconstitutional solely because it results in a . . . disproportionate impact. . . . Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.

*Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991). In a case such as this one, where Mays challenges the actions of prison officials, exceptionally clear proof of discrimination is required. *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988). Evidence which merely indicates disparity of treatment is insufficient to show discriminatory intent. *McKleskey v. Kemp*, 481 U.S. 279 (1987); *Washington v. Davis*, 426 U.S. 229, 242 (1976).

Since this case is before the court on a properly supported motion for summary judgment from the defendants, Mays bears the burden of producing some evidence to show that he was the victim of intentional discrimination. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Here, Mays does not allege that other inmates at Elmore who were adherents to religions as yet unrecognized within the ADOC were afforded "chaplain time" and/or group worship; thus, he has failed to show that he was similarly situated to other inmates.

Furthermore, other than Mays' conclusory allegations that the actions of Defendants violated his equal protection rights, the record is devoid of any evidence that they acted in an intentionally discriminatory manner. Summary judgment is, therefore, due to be granted in favor of Defendants on Mays' equal protection claim.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendants' motion for summary judgment (*Doc. No. 15*) be GRANTED;

2.  Judgment be ENTERED in favor of Defendants;

3.  This case be DISMISSED with prejudice; and

4.  The costs of this proceeding be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **January 7, 2008**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual

findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 26th day of December 2007.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE